UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| ANDREA ELIASON and ) | |
| WAYNE BALNICKI, on behalf of themselves ) | Case No. |
| and all others similarly situated, ) | |
| ) | COMPLAINT - CLASS ACTION |
| Plaintiffs, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| NISSAN NORTH AMERICA, INC. and ) | |
| NISSAN MOTOR CO., LTD., ) | |
| Defendants. ) | |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Andrea Eliason and Wayne Balnicki ("Plaintiffs"), by and through their undersigned attorneys, bring this action against Nissan North America, Inc., and Nissan Motor Co., Ltd. ("Defendants" or "Nissan") individually and on behalf of all others similarly situated. Plaintiffs allege as follows:

## I.    INTRODUCTION

1.    The model year 2014–16 Nissan Rogue and 2015–16 Pathfinder (the "Class Vehicles")—and likely additional vehicles and model years designed, manufactured, and distributed by Nissan—contain defective continuously variable transmissions ("CVTs"). The defect causes delays in acceleration, stalling while driving at speed, jerking, lurching, "juddering," and/or shaking. The defect can also lead to premature wear and total transmission failure, and often presents serious safety concerns to drivers.

2.    Nissan has known about the defect in its CVTs for years, but rather than admitting there is a problem and fixing it in the Class Vehicles, Nissan has denied the existence of the defect, issued numerous TSBs intended to mitigate but not solve the problem, extended warranties in a

CLASS ACTION COMPLAINT - 1

piecemeal fashion for other model years and vehicles, and continued advertising and selling vehicles that contain the defective CVT transmission.

3.      In fact, Nissan has previously settled class actions concerning similarly defective CVTs in 2012-2017 model year Versa and 2014-2017 Versa Note vehicles, 2013-2016 Nissan Altimas, 2013-2017 Sentras, and 2013-2014 Pathfinders.

## II.      PARTIES

4.      Plaintiff **Andrea Eliason** is a Utah citizen who resides in Lehi, Utah. She purchased her 2016 Nissan Rogue from Tim Dahle Nissan in South Jordan, Utah, in March 2016. She paid approximately $37,000 for the vehicle, which is equipped with the defective CVT. At the time of purchase, the vehicle and its transmission were still covered by the manufacturer's warranty. Plaintiff Eliason was promised by the Nissan dealer that the vehicle did not have transmission problems.

5.      Since purchasing her 2016 Rogue, Plaintiff Eliason has often been scared for her own safety and the safety of her family while driving. regular service of the vehicle, including its transmission, the vehicle frequently jerks unsafely. Plaintiff Eliason has had to pull over to the side of the road many times in hopes that turning the vehicle off then on again might resolve the problem, but to no lasting effect. Had Nissan or its dealers disclosed the defective CVT transmission or its safety-related symptoms, Plaintiff Eliason would not have purchased the vehicle or would have paid considerably less for it.

6.      Plaintiff **Wayne Balnicki** is a Colorado citizen. He purchased his 2015 Nissan Pathfinder from Valley Nissan in Longmont, Colorado, in 2015. He paid approximately $37,350 for the vehicle, which is equipped with the defective CVT. At the time of purchase, the vehicle and its transmission were still covered by the manufacturer's warranty.

CLASS ACTION COMPLAINT - 2

Since purchasing his 2015 Pathfinder, Plaintiff Balnicki has experienced an intermittent shudder. Had Nissan or its dealers disclosed the defective CVT transmission or its safety-related symptoms, Plaintiff Balnicki would not have purchased the vehicle or would have paid considerably less for it.

7.      Defendant **Nissan North America, Inc.** is incorporated in California but has its principal place of business at One Nissan Way, Franklin, Tennessee, 37067. Nissan North America designs, manufactures, markets, warrants, and distributes Nissan vehicles, such as the Class Vehicles, throughout the United States. It is a wholly owned subsidiary of Nissan Motor Co., Ltd.

8.      **Nissan Motor Co., Ltd.**, is incorporated in Japan and his its principal place of business there. Nissan Motor Co. designs, manufactures, markets, warrants, and distributes Nissan vehicles globally. It also works closely with its CVT transmission supplier, Jatco Ltd., to design and implement CVTs for Nissan vehicles, including the Class Vehicles. Jatco Ltd. is also a Japanese corporation and a Nissan Motor Co. subsidiary.

9.      There are over 1,000 Nissan dealers in the United States.

### III.   JURISDICTION AND VENUE

10.      This action is properly before this Court and this Court has subject matter jurisdiction under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than Nissan, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A).

11.      Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because they arise from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.

CLASS ACTION COMPLAINT - 3

12.     This Court has personal jurisdiction over Nissan because Nissan North America is headquartered in the State of Tennessee; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in Tennessee; and otherwise intentionally avails itself of the markets within Tennessee through promotion, sale, marketing and distribution of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as Nissan North America is "at home" in Tennessee. Furthermore, Nissan North America acts as agent for Nissan Motor Co., Ltd., in all respects concerning Nissan's business in the United States, including manufacturing, marketing, distributing, and warrantying Nissan-branded vehicles like the Class Vehicles.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c) because substantial part of the events or omissions giving rise to the claims occurred in this District, where Nissan North America is headquartered. Much of the conduct at issue emanated from Nissan's headquarters in this District.

## IV.   FACTUAL ALLEGATIONS

### A.   How continuously variable transmissions work.

14.     Continuously variable transmissions or "CVTs"—unlike automatic or manual transmissions, which have a set number of interlocking, rotating gears—use pulleys and a flexible belt (often made of metal links and therefore sometimes called a chain) to continuously adjust the gear ratio of the transmission in response to the driver's efforts to accelerate (or decelerate) and changes in terrain or elevation. The CVT's pulleys and belt allow the transmission to adjust its gear ratio without ever needing to switch or "shift" gears.

15.     Nissan diagrams conventional CVTs as follows:

CLASS ACTION COMPLAINT - 4



16.     CVTs are supposed to provide a smother driving experience and are supposed to be more fuel efficient.[1]

**B.     Defendants worked together to develop defective CVTs.**

17.     Nissan "and its affiliate and transmission supplier" Jatco Ltd., which is also a Nissan subsidiary, began working together in 2009 to develop "next-generation" CVTs, intended to offer "quicker starts and acceleration," be "compact and lightweight," and improve drivability.[2] These transmissions were initially aimed at smaller vehicles, including those directed to the United States market.

18.     Nissan's VP, Shuichi Nishimura, noted the joint effort's focus on improving fuel efficiency, stating "The need to improve fuel economy, with the resulting reductions in $CO_2$

---

[1] Hearst Autos Research, *CVT Transmission vs. Automatic: Quick Guide*, CAR AND DRIVER, https://www.caranddriver.com/research/a31517125/cvt-transmission-vs-automatic-quick-guide/ (last visited Mar. 25, 2021).

[2] *Nissan and JATCO Develop Next-Generation CVT*, GREEN CAR CONGRESS (July 22, 2009), https://www.greencarcongress.com/2009/07/nissan-and-jatco-develop-nextgeneration-cvt.html (last visited Mar. 25, 2021).

CLASS ACTION COMPLAINT - 5

emissions motivated us to step up our efforts in the joint development with JATCO of this next-generation CVT."[3]

19.    This joint effort ultimately culminated in the "CVT7" transmission, which launched in 2010.[4]

20.    In April 2013, Jatco launched its new CVT8 transmission, which was specifically "aimed at larger and more powerful cars."[5]

21.    The Jatco CVT8 was adopted by Nissan for multiple vehicles, including not only the Rogue and Pathfinder, but also the Altima and others.[6]

22.    In December 2013, Nissan's then CEO, Carlos Ghosn, after "customer satisfaction problems" began hurting Nissan's bottom line, announced that Nissan would be watching its CVT manufacturer, Jatco, more closely, stating, "[W]e now have a process by which, before we launch

---

[3] *Id.*

[4] The Lubrizol Corporation, *Jatco's New CVT Targets Medium and Large Cars*, DRIVELINENEWS (Apr. 17, 2013), https://web.archive.org/web/20150108131709/http://drivelinenews.com/news/jatcos-new-cvt-targets-medium-and-large-cars/.

[5] *Id.*

[6] Roger Schreffler, *Jatco Geared to Meet Growing Global CVT Demand*, WARDSAUTO (May 12, 2015), https://www.wardsauto.com/industry/jatco-geared-meet-growing-global-cvt-demand (last visited Mar. 25, 2021); *see also* Nissan, Technical Service Bulletin NBT18-055b (Mar. 20, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10158429-9999.pdf (last visited Mar. 25, 2021) (TSB concerning vehicles with CVT8 transmissions); JATCO Ltd., *Analysis Report: Continuous Variable Transmission (CVT) (Japanese/U.S./European Markets)*, MarkLines (Nov. 15, 2017), https://www.marklines.com/en/report_all/wsw0034_201709 (last visited Mar. 25, 2021) (2017 report providing comprehensive list of vehicles with CVTs, including CVT8s).

CLASS ACTION COMPLAINT - 6

any new CVT, [Jatco] will come be-fore the Nissan executive committee to explain all the measures they have taken to make sure there are no surprises."[7]

23.     In support of increased oversight of Jatco's CVT development, Nissan "dispatch[ed] its most senior North American manufacturing and supply chain executive, Bill Krueger, to Jatco [to] become executive vice president overseeing the Americas region and chairman of its operations in the United States."[8]

24.     Simultaneously, Jatco announced "plans to work with U.S. car dealers to provide more information about CVTs and gather more customer feedback about its transmissions."[9]

## C.     The CVT transmission in the Class Vehicles is defective and presents serious safety hazards.

25.     The Class Vehicles' CVTs contains a defect that causes delays in acceleration, stalling while driving at speed, jerking, lurching, and "juddering." The defect also leads to premature and total transmission failure and presents serious safety concerns. This is based on voluminous NHTSA complaints related to the defective CVT, as well as Nissan's various TSBs, all of which point to not only the existence of the defect, but also to the fact that Nissan has known about the defect for years, is unable to fix it, but continues to sell defective vehicles anyways, despite countless reports of safety concerns.

### 1.     Nissan first learned that the CVT is defective as early as 2009.

26.     In 2009, Nissan voluntarily extended the powertrain warranty of multiple vehicles equipped with CVTs from five (5) years and/or 60,000 miles to ten (10) years and/or 120,000

---

[7] Lindsay Chappell, *Nissan presses Jatco to end CVT glitches*, AUTOMOTIVE NEWS (Dec. 2, 2013), https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (last visited Mar. 25, 2021).
[8] *Id.*
[9] *Id.*

miles. This extension applied to the 2008–10 Rogue and other vehicles, including the Murano, Versa, Sentra, Altima, Maxima, and Cube.[10] Nissan explained that the warranty was extended because "[w]e have become aware that a small percentage of owners of early models equipped with CVTs have expressed concerns about the cost of repair of their transmissions after the warranty expires."[11] But when Nissan had a chance to explain whether there was a "quality issue" with the CVT, or even what the symptoms were that people would experience if their "CVT has an issue," Nissan failed to come clean about the defect[12]:

**Q4.** Is there a quality issue with the CVT?

**A.** Nissan is confident in the quality of our CVT technology and has developed this program to demonstrate this confidence and stand behind our products. The vast majority of CVT owners will not experience any issue with their transmission. But for the small percentage that may experience an issue this program will address concerns about the cost of repair.

\*\*\*

**Q10.** What symptoms will I experience if my CVT has an issue?

**A.** The vast majority of owners will not experience any issues. However, as with any part of the vehicle if you notice any changes in vehicle operation or performance you should bring your vehicle to an authorized Nissan dealer for inspection.

27.     In 2012, Nissan voluntarily reprogrammed related CVTs' transmission control module (or "TCM") in the Nissan Altima.[13] In this TSB, Nissan acknowledged multiple symptoms that also plague Class Vehicles, including the "judder," which, if untreated, Nissan admitted could lead to "accelerated wear and damage" to the transmission:

> Under certain unique driving conditions, the Continuously Variable Transmission (CVT) belt may slip in some affected 2013 Nissan Altima vehicles. **An indicator that the CVT belt has slipped is a shaking or "judder" from the CVT when**

---

[10] *Nissan CVT Customer Satisfaction Program: Frequently Asked Questions*, Nissan, https://web.archive.org/web/20100323050249/http:/www.nissanassist.com/faqs.php?menu=3.

[11] *Id.*

[12] *Id.*

[13] Nissan, Service Campaign Bulletin NTB12-081 (Sept. 27, 2012), https://www.nissan-techinfo.com/asistgc_1/diskdocs/1/T/T/1TT39.PDF (last visited Mar. 25, 2021).

CLASS ACTION COMPLAINT - 8

**coasting. Continuing to drive the vehicle in this condition can lead to accelerated wear and damage to the CVT.** Reprogramming of the Transmission Control Module (TCM) will prevent the belt slip condition from occurring. This is not a safety issue, and the vehicle still meets and/or exceeds all applicable safety standards.[14]

28.     In 2013, "in the wake of quality and customer satisfaction problems," Nissan announced the need to scrutinize its CVT supplier, Jatco, which was also a Nissan subsidiary.[15]

29.     Also in 2013, in support of increased oversight of Jatco's CVT development, Nissan "dispatch[ed] its most senior North American manufacturing and supply chain executive, Bill Krueger, to Jatco [to] become executive vice president overseeing the Americas region and chairman of its operations in the United States."[16]

30.     More recently, but consistent with the above, Nissan again extended warranties for a few models with CVTs, this time as a part of a class action settlement related to certain 2013–16 Altimas.[17]

    **2.     NHTSA complaints related to the Class Vehicles show that the CVT transmission is defective and that Nissan has long known about the defect.**

31.     Nissan customers have been filing National Highway Traffic Safety Administration ("NHTSA") complaints related to the Class Vehicles for years. Formal NHTSA complaints, like those detailed below and attached as the NHTSA Appendix, were shared with Nissan. Automakers

---

[14] *Id.* at 11.

[15] Lindsay Chappell, *Nissan presses Jatco to end CVT glitches*, AUTOMOTIVE NEWS (Dec. 2, 2013), https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (last visited Mar. 25, 2021).

[16] *Id.*

[17] *See Christopher Gann, et al. v. Nissan North America, Inc.: Frequently Asked Questions*, KCC, http://www.altimacvtsettlement.com/frequently-asked-questions.aspx (last visited Mar. 25, 2021) (discussing warranty extension for Altima vehicles as part of settlement in *Christopher Gann, et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-0096 (M.D. Tenn.)).

CLASS ACTION COMPLAINT - 9

monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. Further, federal law requires automakers to communicate with NHTSA regarding potential defects. Indeed, there is a legal requirement compelling the confidential disclosure of defects and related data by automakers to NHTSA. This includes field reports, customer complaints, and warranty data.[18] Automakers also have a legal obligation to identify and report emerging safety-related defects under the Early Warning Report requirements.[19] Therefore, Nissan knew or should have known of the many complaints about CVT defects logged with NHTSA—the complaints' content, consistency, and volume alerted Nissan to the defect.

32.     Similarly, the NHTSA complaints detailed below and attached also show that Nissan was aware of the CVT's defect because many of the vehicles involved were taken to Nissan dealers for repairs. Any repairs Nissan dealers performed on those vehicles were reported to Nissan itself, which creates and distributes repair protocols or "TSBs" and tracks data related to warranty claims, including customer statements, relevant parts, and work performed. This gave Nissan early knowledge of the transmission defect.

        a.      **Customers began filing NHTSA complaints about the defective transmission in 2014 Rogues and Pathfinders in 2013 and continue to file relevant NHTSA complaints.**

33.     In 2014, Nissan customers began complaining to the National Highway Traffic Safety Administration ("NHTSA") about 2014 Nissan Rogue and Pathfinder defective CVTs.

---

[18] *See* Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, 49 U.S.C. 30111 *et seq.* (2018).

[19] *Id.*

CLASS ACTION COMPLAINT - 10

34.     Regarding the 2014 Rogue, customers reported such terrifying occurrences as the following from November 2014, when a customer reported that his 2014 Rogue began rolling backwards despite being in park, which the dealer said was a transmission issue that required it to be replaced[20]:

**November 4, 2014 NHTSA ID NUMBER: 1065234**

I PARKED MY WIFE'S NEW 2014 NISSAN ROGUE IN OUR GARAGE WHICH IS A FLAT SURFACE. WE STARTED TO EXIT THE CAR TO REMOVE OUR BABY FROM THE BACK SEAT. THE VEHICLE BEGAN ROLLING BACKWARDS AND WOULD HAVE COMPLETELY ROLLED OUT OF THE GARAGE IF I DID NOT PRESS THE BRAKE. I STARTED THE ENGINE AND PULLED IT BACK IN THE GARAGE, PUT THE VEHICLE IN PARK, AND IT BEGAN ROLLING BACKWARDS AGAIN. LUCKILY, THE VEHICLE DID NOT ROLL BACK IN OUR PREVIOUS PARKING SPOT OR IT WOULD HAVE ENDED UP IN THE WOODS.

***I CALLED THE DEALERSHIP THE NEXT DAY AND THEY WERE ABLE TO REPLICATE THE ISSUE. THE SERVICE MANAGER CALLED ME YESTERDAY AND STATED IT WAS THE TRANSMISSION AND IT WOULD NEED TO BE REPLACED. I AM VERY CONCERNED ABOUT THE RELIABILITY, SAFETY, AND VALUE OF THIS CAR.*** I WILL NOTE THE DEALERSHIP HAS BEEN VERY HELPFUL.

35.     Regarding the Pathfinder, customers began filing NHTSA complaints in October 2013 reporting "violent[] jerking" and calling it a "safety hazard," noting they took the vehicle into the dealership for repairs, to no avail, and ultimately calling the vehicle an "accident causing vehicle":

**October 28, 2013 NHTSA ID NUMBER: 10549851**

PURCHASED 2014 PREMIUM PLATITUM NISSAN PATHFINDER ON 10/9/13. ***THE SAME EVENING I NOTICED THE CAR VIOLENTLY JERKING FROM STOP TO 35 MPH (2000 RPM).*** I THOUGHT IT WAS JUST A FLUKE. 4 DAYS LATER THE CAR DID THE SAME THING SEVERAL TIMES. ***I IMMEDIATELY TOOK CAR BACK TO DEALERSHIP. THEY CLAIM THEY COULD NOT DUPLICATE ISSUE. 3 DAYS AFTER THAT, THE CAR VIOLENTLY JERKED FROM STOP TO 35 MPH ALL MORNING.***

---

[20] Capitalization in the NHTSA complaints is original, but emphases are all added.

*I TOOK IT BACK TO DEALERSHIP. THEY DUPLICATED THE ISSUE. SAID CAR NEEDS A TRANSMISSION.* I HAVE RESEARCHED ONLINE TO DETERMINE THIS IS A KNOWN ISSUE WITH NISSAN. IT HAPPENS QUIT FREQUENTLY WITH THE 2013/2014 CVT TRANSMISSIONS IN THE PATHFINDERS. CHECK EDMUNDS.COM, KBB.COM, ETC FOR REVIEWS. THE CUSTOMER REVIEWS ALL SAY THE SAME THING. THIS IS A SAFETY HAZARD BECAUSE WHEN THE CAR IS TRYING TO LEAVE 2ND GEAR WHILE JERKING, IT IS NOT PICKING UP SPEED AND CAN CAUSE SOMEONE TO RUN INTO THE BACK OF THE CAR; CAUSING INJURY OR EVEN DEATH. THIS NEEDS TO BE LOOKED INTO IMMEDIATELY AND NISSAN NEEDS TO STOP PRODUCTION OF THESE TRANSMISSIONS UNTIL THEY CAN FIX THE PROBLEM. NHTSA PLEASE GET INVOLVED TO STOP NISSAN FROM PRODUCING THESE FAULTY TRANSMISSIONS AND TO FORCE THEM TO FIX THE ONES THEY HAVE SOLD TO INNOCENT PURCHASERS. IT'S NOT RIGHT THAT THEY CONTINUE TO TAKE INNOCENT PEOPLE'S HARD EARN MONEY AND PROFIT FROM THAT, WHILE WE ARE FORCED TO PAY TO RIDE IN WHAT COULD BE A ACCIDENT CAUSING VEHICLE; RESULTING IN INJURY AND/OR WORSE CASE, DEATH!!! PLEASE BE PROACTIVE. LET'S SAVE LIVES BEFORE IT'S TOO LATE! *TR

36.     Many later NHTSA complaints related to 2014 Rogue report jerking and safety

concerns, and that the vehicles were taken into Nissan dealers for repairs:

**April 7, 2017 NHTSA ID NUMBER: 10971058**

WIFE COMING HOME AFTER DROPPING DAUGHTER OFF FROM SCHOOL, *CAR FELT JERKY AND UNSTABLE*, PULLED INTO THE DRIVEWAY AND ENGINE DIED. I THEN STARTED VEHICLE, SHIFTED INTO REVERSE, VEHICLE DIED. TRIED AGAIN AND IT STARTED, BUT HAD LOTS OF HESITATION, *TOOK TO DEALERSHIP*, THEY HAD IT FOR 3 WORKING DAYS AND COULD NOT DUPLICATE THE ERROR AND NO ERROR CODE, SO THEY SENT THE VEHICLE BACK TO US. NEXT DAY *WIFE WENT TO PICK UP DAUGHTER FROM SCHOOL AND WHILE PULLING OUT OF THE SCHOOL PARKING LOT, CAR DIED AND THEY WERE ALMOST STRUCK BY ANOTHER VEHICLE WHO WAS TRAVELING AT HIGHER SPEED.* COULD START THE CAR, BUT COULD NOT SHIFT INTO ANY GEAR WITHOUT CAR DYING. ONCE AGAIN, NO TROUBLE/ERROR CODES WERE BEING FIRED OFF. *TOOK CAR TO DEALERSHIP* WHERE AGAIN THEY TRIED FOR 2 DAYS TO GET THE CAR TO ACT UP, UNTIL FINALLY IT ACTED UP ON THE FREEWAY WHERE IT ALMOST DIED THERE. *THEY DIAGNOSED THE ISSUE AS A FAULTY TORQUE CONVERTER, WHICH REQUIRES A FULL TRANSMISSION REPLACEMENT. THE VEHICLE ONLY IS 3 YEARS OLD, WITH ONLY 75,000 MILES ON IT. THIS IS A SAFETY ISSUE*, THE CAR

CLASS ACTION COMPLAINT - 12

CUTS OUT WITH LITTLE WARNING AT LOW SPEEDS, MEANING ESPECIALLY DANGEROUS WHEN TRYING TO MAKE TURNS AND ACCELERATE INTO TRAFFIC. ADDITIONALLY, NO ERROR CODES WERE THROWN AT ALL, AND TOOK 6 WORKING DAYS AT A DEALERSHIP TO DETERMINE THE ISSUE. FURTHERMORE, IT IS SPORADIC AND CANNOT BE DIAGNOSED EASILY OR QUICKLY, SUGGESTING THAT THERE IS A HIGH POTENTIAL FOR THIS ISSUE TO OCCUR WITH OTHER VEHICLES AND THEY WILL BE SENT BACK OUT ON THE ROAD WITHOUT HAVING THE ISSUE FIX, PLACING PEOPLE IN SIGNIFICANT DANGER. THIS IS THE FIRST YEAR OF THE REDESIGN OF THE ROGUE AND ONE OF THE FIRST SOLD IN TEXAS, BUT THIS IS UNACCEPTABLE AND EXTREMELY DANGEROUS AS THERE IS NO WAY TO EASILY DIAGNOSE THE ISSUE AND HOW THE FAILURE OCCURS. ALL RECOMMENDED SERVICES WERE PERFORMED AT NISSAN DEALERSHIPS FOR THE TRANSMISSION AS WELL AT 30K AND 60K.

37.     Likewise, later NHTSA complaints related to the Pathfinder also report jerking and

taking cars to Nissan dealers for repairs:

**February 19, 2014 NHTSA ID NUMBER: 10565049**

SINCE 10/12/13, *THE VEHICLE HAS EXPERIENCED VIOLENT SHUDDERING AND LOSS OF POWER. WHEN THE VEHICLE IS BROUGHT TO THE NISSAN SERVICE DEPARTMENT IT IS ALWAYS UNABLE TO DUPLICATE.* WE CONTINUE DRIVING THE VEHICLE AND IT GETS WORSE. FINALLY AFTER IT BECOMES ALMOST UNABLE TO DRIVE NISSAN ADMITS THERE IS A PROBLEM AND REPLACES THE CVT. *WE ARE NOW ON OUR THIRD CVT SINCE WE PURCHASED THE CAR ON 7/22/13.* WE HAVE TO TRAVEL A TWO LANE MOUNTAIN HIGHWAY AND IT HAS HAPPENED SEVERAL TIMES AND DUE TO LOSING POWER GOING UPHILL *WE HAVE ALMOST BEEN HIT ON NUMEROUS OCCASIONS. IT HAS ALSO HAPPENED ON THE FREEWAY. IT HAS HAPPENED AT A BUSY INTERSECTION AND THE CAR COMPLETELY LOST POWER AND THE CAR BEHIND US SLAMMED ON THEIR BRAKES AND SWERVED TO AVOID HITTING US.* IT HAS HAPPENED AT SPEEDS FROM 30 TO 60 MPH. I AM GRAVELY CONCERNED FOR MY FAMILY'S SAFETY, WE ALSO HAVE A NEWBORN AND I AM SCARED TO HAVE HIM IN THIS CAR BUT I HAVE NO CHOICE. *I HONESTLY FEEL THAT IT IS A MATTER OF TIME BEFORE WE ARE HIT DUE TO THESE ISSUES. NISSAN CONTINUES TO DENY THIS IS A SAFETY CONCERN.* *TR

**May 8, 2015 NHTSA ID NUMBER: 10715431**

*I HAVE EXPERIENCED A SHUDDERING* ON A BRAND NEW 2014 NISSAN PATHFINDER, WHICH STARTED WITH LESS THAN 100 MILES ON IT. AT 3200 MILES IT HAPPENED 5 OR 6 TIMES. *TODAY I LEARNED IT NEEDS A NEW TRANSMISSION, BUT WHEN I ASK IF THE NEW TRANSMISSION HAS BEEN UPGRADED OR IF THEY HAVE FOUND A FIX I AM TOLD "IT IS A NEW TRANSMISSION COMING FROM NISSAN"* "WE ARE NOT TOLD OF THE UPGRADES, THEY JUST SEND US THE NEW TRANSMISSION". AS FAR AS I CAN TELL, THERE HAS NOT BEEN A RESOLUTION TO THE WELL KNOWN PROBLEM WITH NISSAN CVT TRANSMISSION. *I AM CONCERNED I AM GETTING A NEW TRANSMISSION WITH AN OLD PROBLEM AND NO ONE CAN/WILL TELL ME OTHERWISE.* IS MY CAR GOING TO BE SAFE? WHERE CAN I FIND OUT IF THIS NEW TRANSMISSION DOES NOT HAVE THE SAME PROBLEM MY 2014 TRANSMISSION HAD? *TR

38.     NHTSA complaints related to the Class Vehicles' defective transmission continued from 2014 through 2021.[21]

> **b.     Customers began filing NHTSA complaints about the defective transmission in 2015 Rogues and Pathfinders in 2014 and continue to file relevant NHTSA complaints.**

39.     In late 2014, Nissan customers began filing NHTSA complaints about the 2015 Nissan Rogue and Pathfinder's defective CVT transmission.

40.     Regarding the 2015 Rogue, customers reported issues like inappropriate and unsafe engine revving during traffic and transmission failures at just 500 miles, and that vehicles were taken to dealers or "Nissan":

**December 5, 2014 NHTSA ID NUMBER: 10662439**

THE CAR REVS UP TO 5 RPMS AT 60MPH LIKE ITS STUCK IN NEUTRAL. NEED TO TAKE THE FOOT OFF THE GAS GET DOWN TO 50MPH AND WAS ABLE TO GET IT BACK UP TO 65MPH. I DID THIS IN RUSH HOUR TRAFFIC. *I WAS AFRAID THE PERSON BEHIND WAS GOING TO HIT TO CHANGE SPEEDS SO FAST. NISSAN LOOKED AT THE CAR TODAY AND SAID THERE WASN'T AN ISSUE AND I NEEDED TO DO THAT TO LET THE TRANSMISSION CATCH UP.* NEVER HEARD OF SUCH A THING. MY

---

[21] *See* NHTSA Appendix.

CLASS ACTION COMPLAINT - 14

LAST NISSAN AT 98K DIED BECAUSE OF THE TRANSMISSION. BEFORE IT DIED IT WAS DOING THE SAME THING.

**December 24, 2014 NHTSA ID NUMBER: 10668154**

THE CONTACT OWNS A 2015 NISSAN ROGUE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH FROM A STOP SIGN, THE ENGINE BEGAN TO REV AND THE VEHICLE FAILED TO ACCELERATE OVER 10 MPH. IN ADDITION, THE VEHICLE STALLED. THE VEHICLE WAS RESTARTED BUT FAILED TO DRIVE OR REVERSE. THE VEHICLE WAS TOWED TO THE DEALER, WHO DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. ***THE MANUFACTURER WAS MADE AWARE OF THE FAILURE.*** THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 500.

41.    Regarding the 2015 Pathfinder, customers reported early transmission failures as

early as September 2015, and that dealers refused to "do anything":

**November 11, 2015 NHTSA ID NUMBER: 10789823**

CVT TRANSMISSION ***SHUDDERS AT LOW SPEED*** (20-40 MPH) WITH LIGHT THROTTLE APPLICATION. THIS PROBLEM HAS BEEN EXPERIENCED SINCE WE PURCHASED THE VEHICLE ON 9/10/2015

**November 13, 2015 NHTSA ID NUMBER: 10790327**

VEHICLE WAS ***TAKEN INTO SHOP BECAUSE OF SHUDDER IN TRANSMISSION*** AND HESITATION FROM STOP WHEN APPLYING ACCELERATOR. THE NISSAN DEALER INSTALLED A NEW VALVE BODY IN THE TRANSMISSION WHICH SEEMED TO STOP THE SHUDDER UNTIL TODAY WHEN IT HAS RETURNED. THE HESITATION FROM STOP PROBLEM WAS NOT FIXED AND I RETURNED THE PATHFINDER A SECOND TIME TO FIX THIS PROBLEM BUT SINCE IT DID NOT THROW A CODE AND COULD NOT BE DUPLICATED IT WAS NOT FIXED. THE HESITATION PROBLEM IS AN ITERMITTENT PROBLEM BUT WHEN IT HAPPENS THE VEHICLE DOES NOT MOVE FORWARD WHEN THE GAS IS FIRST APPLIED FOR A SECOND OR TWO. ***I HAVE ALMOST HAD TWO ACCIDENT BECAUSE OF THIS PROBLEM WHEN PULLING INTO TRAFFIC AND THE CAR WILL NOT MOVE WHEN GAS APPLIED. THE SHUDDER PROBLEM [H]AS RETURNED*** AND CAN BE FELT AT AROUND 40MPH.

42.     Many of the later NHTSA complaints related to the 2015 Rogue note drivability

issues, early transmission failures, and safety concerns, and many make it clear that Nissan could

not fix the defect:

**May 16, 2016 NHTSA ID NUMBER: 10865144**

TRANSMISSION WAS REPLACED WITHIN 6 MONTHS OF HAVING THE CAR. THEY ALSO ADJUST IDLE SPEED WITHIN A MONTH OF HAVING THE CAR AND ALSO HAD ISSUES WITH POWER SOCKETS. ***CAR MAKES RATTLE NOISE WHEN ACCELERATING AND MAKE LESS GAS MILAGE THAN AVERAGE . THEY HAD REPROGRAMMED THE TCM ALREADY. THEY ALSO CHANGED THE SHIFTER*** . THEY HAD ADJUST BOTH FRONT BRAKE BACKING PLATES. I WON'T RECOGNIZE THE SMART KEY SOMETIMES. THEY REPLACED ONE HEADLIGHT ALREADY. IT HAS SEVERAL RECALLS.

**September 6, 2017 NHTSA ID NUMBER: 11021758**

I PURCHASED THIS VEHICLE, DRIVING ON THE HIGHWAY THE TRANSMISSION BLEW OUT, CAR WOULD NOT ACCELERATE PASS 40 MILES AN HOUR, ONLY HAD THE VEHICLE FOR 7 DAYS!!

**March 11, 2018 NHTSA ID NUMBER: 11078528**

THERE IS SOMETHING DESPERATELY WRONG WITH THE TRANSMISSION/POWER IN MY VEHICLE. ***I LOSE POWER WHEN GOING UP HILLS, ESPECIALLY WHEN THEY ARE CONTINUAL, LIKE UP A MOUNTAIN PASS! THERE IS A SUPER HIGH PITCHED NOISE WHEN THE CAR RUNS FOR OVER AN HOUR, LIKE SQUEALING. TOLD THERE IS NO PROBLEM AT NISSAN DEALERSHIP***, THIS IS NOT TRUE. THE NOISE HAPPENS IN EVERY GEAR WHEN IT STARTS AND DOESN'T STOP UNTIL THE CAR COOLS AGAIN. THE POWER IN VEHICLE THAT IS LOST UP HILLS, WILL KEEP IT FROM EVER GOING ABOVE 60 UNTIL SEVERAL HOURS LATER. THE POWER IS LOST IN THE WHOLE VEHICLE, IT LAGS AND SOMETIMES NOTHING HAPPENS DURING THIS POWER LOSS WHEN PUSHING THE GAS PEDAL. THE LOSS OF POWER IS SO MUCH THAT IT CAN'T CONTINUE TO GO UP HILLS SOMETIMES AND I'VE HAD TO PULL OVER! VERY SCARY ON A MOUNTAIN PASS!

43.     Similarly, many later 2015 Pathfinder complaints report "juddering" issues or

dangerous delays to accelerate, that people continued to take the vehicles into Nissan dealers, and

that some of the vehicles had even be certified and resold by Nissan dealers:

CLASS ACTION COMPLAINT - 16

**May 16, 2016 NHTSA ID NUMBER: 10865044**

WHILE DRIVING OUR PATHFINDER IN STOP AND GO TRAFFIC, *I'VE STARTED TO NOTICE AND FEEL A JUDDERING & JERKING MOTION COMING FROM THE TRANSMISSION/POWERTRAIN EVERY TIME I DEPRESS OR PRESS ON THE GAS PEDAL AT BETWEEN SPEEDS OF 15 TO 40 MPH.* I PLAN TO REPORT THIS TO NISSAN ALONG WITH A COUPLE MORE ISSUES LIKE THE CRACKLING SOUND COMING FROM THE FRONT SUSPENSION USUALLY AFTER REVERSING BACK OUT OF A DRIVEWAY THEN MOVING FORWARD WHILE SLIGHTLY TURNING THE WHEEL BACK TO A STRAIGHT POSITION. COULD BE A BEARING ISSUE, RACKING PINION OR POSSIBLY THE BRAKE ISSUES THAT HAVE BEEN RECALLED. I WILL ALSO REPORT THE CONSTANT ANNOUNCE OF A CRACKLING SOUND COMING FROM THE WOOD PANELING AROUND STEREO AND AIR CONDITION CONTROLS. LAST BUT NOT LEAST THE SCARY & VISIBLE SHAKING OF THE FRONT HOOD WHILE DRIVING AT SPEEDS OF OVER 80MPH. THIS VIOLENTLY SHAKING FROM THE HOOD WILL CERTAINLY LET YOU KNOW THAT IF YOU GO ANY FASTER CHANCES ARE THE HOOD WILL FLY OFF OR CAUSE SERIOUS DAMAGE TO THE VEHICLE OR POSSIBLY CAUSE AN ACCIDENT. THERE IS NO DOUBT IN MY MIND THAT THIS IS ISSUE IS CLEARLY AN AERO DYNAMIC FLAW. HOW CAN THEY NOT HAVE BEEN AWARE OF THIS POSSIBLE SERIOUS SAFETY ISSUE ?

**February 8, 2018 NHTSA ID NUMBER: 11071844**

2015 NISSAN PATHFINDER SOMETIMES WILL NOT GO WHEN THE GAS PEDAL IS PRESSED FROM A STOPPED POSITION. 3 DIFFERENT TIMES THIS HAS HAPPENED TO ME AND MY WIFE. THIS IS AN EXTREMELY DANGEROUS SITUATION. IT HAPPENED THE LAST TIME AS WE WERE TRYING TO CROSS FOUR LANES OF TRAFFIC AT AN INTERSECTION.AS THE LIGHT TURNED GREEN AND WE TRIED TO GO IT ONLY IDLED ACROSS THE INTERSECTION

*WE GOT IT TO THE DEALERSHIP ASAP IT'S BEEN THERE A WEEK SO FAR. VEHICLE WAS MANUFACTURED IN AUG 2015. I PURCHASED IT USED BUT CERTIFIED!*

PLEASE INVESTIGATE TO SEE IF THE PROBLEMS THEY HAD WITH THE 2013-2014 MODELS ARE CONTINUING. I HAVE HEARD IT MIGHT BE THE TRANSMISSION?

*ALL MAINTENANCE HAS BEEN PERFORMED ACCORDING TO CARFAX, INCLUDING AT 9,774 AN ENGINE POWER TRAIN COMPUTER MODULE REPROGRAMMED.*

CERTIFICATION WAS DONE BY NISSAN ON 8/21/2018 AND PURCHASED
BY US.ON 9/2/2017.

ANY HELP TO KEEP ME AND MY WIFE SAFE WILL BE APPRECIATED.

44.     NHTSA complaints related to the 2015 Rogue and Pathfinder continued from 2014

through 2021.[22]

        **c.     Customers began filing NHTSA complaints about the defective
         transmission in 2016 Rogues in 2017 and continue to file relevant
         NHTSA complaints.**

45.     In early 2017, Nissan customers began filing NHTSA complaints about the 2016

Nissan Rogue and Pathfinder's defective transmission.

46.     Regarding the 2016 Rogue, customers reported in early 2017 that Nissan's

attempted service campaigns actually made the car drive worse, which the dealer said could not

be reversed:

**February 16, 2017 NHTSA ID NUMBER: 10955053**

A NISSAN DEALER HAD PREFORMED A SERVICE CAMPAIGN PC4900 TO
MY 2016 NISSAN ROGUE IT INVOLVED THE CVT TRANSMISSION
SOFTWARE AND SINCE THEY DID IT THE CAR IS NOT DRIVING LIKE
BEFORE. THE SHIFTING IS SLOWER AND TAKES LONGER TO SHIFT,
THE ENGINE IS LOUDER AND REVVING HIGHER AND THE FUEL
ECONOMY GOT VERY BAD.

***CONTACTED THE DEALER*** AND ASKED IF THIS SERVICE CAMPAIGN
CAN BE REVERSED AND THEIR ANSWER WAS "NO" I WILL BE TAKING
THE CAR BACK TO THEM HAVE THEM CHECK IT AND ALSO
***CONTACTED NISSAN CORP AND OPENED A CASE.*** I HOPE THEY FIX
THIS PROBLEM AS SOON AS POSSIBLE.

47.     Many of the later NHTSA complaints related to the 2016 Rogue report serious

safety concerns related to the CVT transmission, including a "jumping" feeling that precipitated a

stall, and that vehicles were taken into Nissan dealers for repairs (emphases added):

---

[22] *See* NHTSA Appendix.

**January 16, 2018 NHTSA ID NUMBER: 11063166**

*AS I WAS TRAVELLING ON A MAJOR FREEWAY, MY BRAND NEW 2016 NISSAN ROGUE BEGAN TO FEEL LIKE IT WAS "JUMPING."* AT THAT POINT I NOTICED MY RPMS WERE HIGH FOR THE SPEED I WAS GOING. *NOT EVEN 30 SECONDS AFTER, MY CAR COMPLETELY STALLED. I WAS IN THE FAST LANE OF THE FREEWAY AND BARELY HAD TIME TO REACT.* I ENDED UP STUCK ON THE MEDIAN OF THE FREEWAY. *I ENDED UP HAVING THE CAR TAKEN TO THE DEALER DOWN THE ROAD. THEY SAID THEY COULDN'T FIND ANYTHING WRONG WITH IT.* I REFUSED TO DRIVE IT AND BEGAN SEEKING FURTHER HELP THROUGH NISSAN CONSUMER AFFAIRS. AFTER NEARLY A MONTH, AN ENGINEER FROM NISSAN TOOK 5 MINUTES TO LOOK AT IT AND NOTICED THE TRANSMISSION WAS SLIPPING. THE PREVIOUS WEEK BEFORE THIS MAJOR INCIDENT, THE CAR IS STALLED A FEW BLOCKS FROM MY HOME ON A RESIDENTIAL STREET AFTER ACCELERATING FROM A COMPLETE STOP. *THE DEALERSHIP HAD TOLD ME THERE WAS NOTHING WRONG WITH IT AND IT WAS SAFE TO DRIVE.* NOW HERE WE ARE 2 MONTHS LATER, AND IT FEELS AS IF THE TRANSMISSION IS SLIPPING AGAIN.

**July 11, 2018 NHTSA ID NUMBER: 11110737**

TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE ACCELERATING, *AN ABNORMAL WINDING NOISE* WAS HEARD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS *TAKEN TO THE LOCAL DEALER* (CAUSEWAY NISSAN, 435 NJ-72, MANAHAWKIN, NJ 08050) WHERE IT WAS DIAGNOSED THAT *THE TRANSMISSION NEEDED TO BE REPLACED*. THE VEHICLE WAS NOT REPAIRED. *THE MANUFACTURER WAS NOTIFIED* AND OPENED CASE NUMBER: 32050871. NO FURTHER ASSISTANCE WAS PROVIDED. THE FAILURE MILEAGE WAS 67,000.

48.     NHTSA Complaints related to the 2016 Rogue continued from 2017 through 2021.[23]

**3.      Nissan issued multiple TSBs related to defective CVT transmission in the Rogue, beginning in 2015.**

49.     In 2015, Nissan issued multiple TSBs related to vehicles containing the Rogue's defective CVT transmission.

---

[23] *See* NHTSA Appendix.

A.     NTB15-083[24]: applicable to 2014–16 Nissan Rogue vehicles (and 2013–15 Nissan Altimas); recommended reprogramming the TCM to address "a transmission judder (shake, shudder, single or multiple bumps or vibration)."

B.     NTB15-084a[25]: applicable to the same vehicles; outlined procedure for replacing the CVT assembly to address the same condition.

C.     NTB15-086a[26]: applicable to same vehicles; prescribed various service procedures, including replacement of the CVT assembly, and noted that the affected vehicles may "hesitate and/or have a lack of power."

50.     In 2016, Nissan updated a TSB related to the Rogue's defective CVT transmission: NTB15-084b was intended to address a "transmission judder (shake, shudder, single or multiple bumps or vibration)" in 2014–16 Nissan Rogue vehicles (and in 2013–16 Nissan Altimas, later the subject of a class action lawsuit, settled in 2017); it outlined a procedure for replacing either the CVT assembly or the valve body.[27]

51.     In 2017, Nissan issued and/or updated more TSBs related to the Rogue's defective CVT transmission, and settled a lawsuit about the same transmission in Altimas:

---

[24] Nissan, Service Bulletin NTB15-083 (Oct. 7, 2015), https://f01.justanswer.com/05muranosl/1e9f0be5-9442-4a19-b839-498074e7294e_NTB15-083_rogue.pdf (last visited Mar. 25, 2021).

[25] *See generally* Nissan, Service Bulletin NTB15-084a (Nov. 11, 2015), https://x.nissanhelp.com/forums/local_links.php?linkid=4172&catid=776 (referenced) (last visited Mar. 25, 2011).

[26] Nissan, Service Bulletin NTB15-086a (Nov. 11, 2015), https://static.nhtsa.gov/odi/tsbs/2015/SB-10074569-2280.pdf (last visited Mar. 25, 2021).

[27] Nissan, Service Bulletin NTB15-084b (Apr. 1, 2016), https://static.nhtsa.gov/odi/tsbs/2016/SB-10075090-5448.pdf (last visited Mar. 25, 2021).

A.     NTB15-086f[28]: applicable to 2014–16 Rogues (and 2013–14 Altimas); described procedures for replacing the CVT assembly or the valve body, as well as reprogramming the TCM if necessary, to address "HESITATION AND/OR LACK OF POWER."

B.     NTB15-086g[29]: applicable to 2014–16 Rogues (and 2013–14 Altimas); described procedure for reprograming TCM or replacing the valve body, focusing on inspecting the CVT transmission belt to determine if it is "NG" by focusing on "scuffing and "smeared" lines on the belt:



Figure 13: Example of NG belt

---

[28] Nissan, Service Bulletin NTB15-086f (Feb. 10, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10120554-9999.pdf (last visited Mar. 25, 2021).
[29] Nissan, Service Bulletin NTB15-086g (Apr. 18, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10109247-9999.pdf (last visited Mar. 25, 2021).

Pictures in Figures 15-17 were taken with borescope J-51951.



Figure 15: Example of NG belt



Figure 16: Example of NG belt

C.　　NTB15-084c[30]: updated TSB NTB15-084b to include more model years; outlined procedure through which either the CVT assembly or the Valve Body would need to be replaced to address "a transmission judder (shake, shudder single or multiple bumps or vibration)."

52.　　More recently, Nissan has continued to issue TSBs related to the defective CVT for vehicles that contain the same or similar defective CVTs.[31]

**4.　Nissan issued multiple TSBs related to defective CVT transmission in the Pathfinder, beginning in 2013.**

53.　　In 2013, Nissan issued TSB NTB13-086, related to the Pathfinder's defective CVT transmission. This TSB was intended to address a "juddering during light acceleration" in 2013-2014 Nissan Pathfinders with CVTs (and in 2013–14 Nissan Altimas). It outlined a procedure for reprogramming the TCM and potentially replacing the torque converter.

54.　　In 2016, Nissan issued TSB NTB16-120, related to the Pathfinder's defective transmission. This TSB applied to any customer who answered "yes" to the question "Are you experiencing any issue with your transmission?" It outlined a diagnostic procedure that included potentially inspecting and replacing the CVT chain and control valve, if the technician found "evidence of chain slippage" created markings or "scuff marks" on the belts in the CVTs ("NG"

---

[30] Nissan, Service Bulletin NTB15-084c (Apr. 18, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10109245-9999.pdf (last visited Mar. 25, 2021).

[31] See for example Nissan Service Bulletin NTB12-103f (Nov. 8, 2018), https://www.nissan-techinfo.com/documents/NTB12-103f.pdf (last visited Mar. 25, 2021), which provides CVT/TCM calibration procedures that apply to not only 2014–19 Rogues and 2013–19 Pathfinders, but also numerous other vehicles, including Altimas, Jukes, Maximas, Muranos, Quests, and Sentras.

CLASS ACTION COMPLAINT - 23

means there is slippage):



Figure 10C



Figure 16C                    Figure 17C



Figure 18C

55.     Also in 2016, Nissan released a service campaign bulletin, PC500, designed to address the judder caused by the CVT belt slipping and/or the control valve in 2013–14 Pathfinders. PC500 advised technicians to reprogram the TCM to hopefully improve service diagnostics by adding new diagnostic codes specifically related to the "judder":

**\*\*\*\*\* Campaign Summary \*\*\*\*\***

Nissan is conducting a Voluntary Service Campaign to reprogram the Transmission Control Module (TCM) to improve CVT service diagnostics. This diagnostic software update will enhance the dealer's ability to diagnose customer concerns regarding Continuously Variable Transmission (CVT) operation; it **does not** repair any symptoms nor alter the drive characteristics of the vehicle. Specifically, the diagnostic logic will store two new Diagnostic Trouble Codes when "Judder" symptoms occur on vehicles.

- P17F0 – "Judder" caused by belt slip
- PF171 – "Judder" caused by control valve

PC500 also announced that Nissan would extend the warranty coverage on the CVT assembling, including internal CVT components, the CVT control valve and body, and the torque converter, from five years and/or 60,000 miles to just under eight years and/or 84,000 miles—another piecemeal warranty extension that demonstrates Nissan is aware of the defect but is unwilling to admit it in full.

56.     In 2017, Nissan updated NTB16-120 with NTB 16-120b, outlining how to reprogram 2013–14 Pathfinder CVT's TCM and, "if needed, inspect and replace the CVT or CVT control valve." According to this TSB, the technician performing the inspection was told to replace the entire CVT transmission if they either found that one of the above diagnostic codes was present—P17F0—or the CVT chain was "NG" or "no good" (the "interview question" is simply, again, "Are you experiencing any issue with your transmission?"):



57.     Nissan also issued TSB NTB17-039 in 2017, specifically to address situations where 2013–14 Pathfinder "customer[s] report[] a transmission judder (shake, shudder, single or multiple bumps or vibration)."

58.     In 2018, Nissan issued TSB NTB13-077c, which updated technicians on how to check CVT fluid levels, suggesting there may be a problem with how CVTs maintain fluid levels. This TSB extended to the following vehicles equipped with CVTs, including 2014–17 Rogues and extending the acknowledged problem to 2013–17 Pathfinders:

## CVT FLUID LEVEL CHECK SERVICE INFORMATION

> This bulletin has been amended. The APPLIED VEHICLES section has been revised.
> No other changes have been made. Please discard all previous versions of this bulletin.

**APPLIED VEHICLES:**

| | |
|---|---|
| 2013-2017 Altima Sedan (L33) | 2014-2017 Rogue (T32) |
| 2016-2017 Maxima (A36) | 2017 Rogue Hybrid (T32) |
| 2015-2017 Murano (Z52) | 2017 Rogue Sport (J11) |
| 2016 Murano Hybrid (Z52) | 2013-2017 Sentra (B17) |
| 2013-2017 Pathfinder (R52) | 2014-2017 Versa NOTE (E12) |
| 2014-2015 Pathfinder Hybrid (R52) | 2012-2018 Versa Sedan (N17) |

**APPLIED TRANSMISSION:** Vehicles equipped with CVT **ONLY**

59. Nissan issued similar TSBs applying to both Rogues and Pathfinders in 2018 and 2019, including, for example, NTB18-055. These TSBs all suggest that the vehicles CVTs had issues maintaining their fluid levels, likely related to the alleged defect.

60. In October 2019, Nissan issued TSB NTB17-039g. NTB17-039 was originally published in 2017 to address the "judder," but limited to the 2013-2014 Pathfinder. The updated TSB expanded well beyond the 2013–14 Pathfinder, including 2016 and 2017 Pathinders, but also various other vehicles potentially experienceing a "shudder":

# SERVICE BULLETIN

| Classification: | Reference: | Date: |
|---|---|---|
| AT16-020g | NTB17-039g | October 8, 2019 |

## PATHFINDER, ALTIMA, MAXIMA, MURANO AND QUEST; CVT JUDDER AND DTC P17F0 OR P17F1 STORED

> This bulletin has been amended. See AMENDMENT HISTORY on the last page.
> Discard all previous versions of this bulletin.

| **APPLIED VEHICLE:** | 2013-2017 Altima (L33) | 2013-2017 Pathfinder (R52) |
|---|---|---|
| | 2015-2017 Murano (Z52) | 2015-2017 Quest (E52) |
| | 2016-2017 Maxima (A36) | |
| **APPLIED TRANSMISSION:** | CVT with V6 engine only | |

**IF YOU CONFIRM**

The customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration),

CLASS ACTION COMPLAINT - 27

Nissan updated this TSB again in 2019 and 2020.

61.    In 2019, Nissan issued NTB15-013e, which applied to not only 2013–20 Pathfinders, but also 2014–20 Rogues and other vehicles. This TSB outlined a procedure for cleaning CVT transmission fluid cooling systems, noting that "[m]etal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler":

# SERVICE BULLETIN

| Classification: | Reference: | Date: |
|---|---|---|
| AT14-016e | NTB15-013e | October 31, 2019 |

## NISSAN; PROCEDURE TO CLEAN CVT TRANSMISSION FLUID COOLERS

> This bulletin has been amended. See AMENDMENT HISTORY on the last page.
> Please discard previous versions of this bulletin.

**APPLIED VEHICLES:**
2013-2015 Altima (L33)  —  **4 cylinder and V6**
2016-2018 Altima (L33) —  **V6 only**
2015-2017 Juke (F15)
2016-2020 Maxima (A36)
2015-2020 Murano (Z52)  —  **V6 only**
2013-2020 Pathfinder (R52)  —  **V6 only**
2015-2017 Quest (E52)
2014-2020 Rogue (T32)

**APPLIED TRANSMISSION:**    **CVT**

**IMPORTANT:** Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque converter. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT.

The presence of metal debris or friction material in CVT cooling systems is consistent with possible unintentional rubbing or friction related to the CVT transmission belts, as noted above, and taken together with the numerous TSBs and class action settlements suggests that vehicles

beyond the Class Vehicles may still have similarly defective CVTs. Furthermore, this litany of

TSBs indicates that Nissan still does not have a permanent fix for the defective CVTs.

**D.**  **Nissan advertised the Class Vehicles with the defective CVT, but consistently concealed the defect.**

62.  Nissan promoted 2014 Rogue vehicles with the defective transmission in the United

States by touting the "excellent fuel economy" and "virtually gearless" CVT transmission:[32]



63.  Nissan promoted the 2015 Pathfinders similarly, trumpeting their "outstanding fuel

economy and best-in-class towing" and "efficiency, brought to you by the Next-Generation

Xtronic CVT"[33]:

---

[32] Nissan, 2014 Rogue, at 10, https://cdn.dealereprocess.org/cdn/brochures/nissan/2014-rogue.pdf (last visited Mar. 25, 2021).

[33] Nissan, 2014 Pathfinder, at 9, https://cdn.dealereprocess.org/cdn/brochures/nissan/2014-pathfinder.pdf (last visited Mar. 25, 2021); Nissan, 2015 Pathfinder, at 9, https://cdn.dealereprocess.org/cdn/brochures/nissan/2015-pathfinder.pdf (last visited Mar. 25, 2021).

CLASS ACTION COMPLAINT - 29



64. Nissan issued similar advertisements for 2015 Rogues, again highlighting their "virtually gearless Xtronic CVT transmission," which "maximizes efficiency and performance"[34]:



65. For 2015 Pathfinders, Nissan issued press releases touting a "number of enhancements," including enhanced shifting on the standard "Xtronic [CVT] transmission."[35]

---

[34] Nissan, 2015 Rogue, at 9, https://cdn.dealereprocess.org/cdn/brochures/nissan/2015-rogue.pdf (last visited Mar. 25, 2021).

[35] *Nissan announces 2015 Pathfinder U.S. Pricing*, NISSAN (Oct. 20, 2014), https://usa.nissannews.com/en-US/releases/release-4e148fc6b6364dcc896b7558037c0f6c-nissan-announces-2015-pathfinder-u-s-pricing (last visited Mar. 25, 2021).

CLASS ACTION COMPLAINT - 30

66.    For 2016 Rogues, Nissan issued multiple press releases lauding the "advanced" CVT transmission in the Rogue, the enhanced fuel economy that supposedly came with it, and other benefits due to the CVT.[36]

67.    For 2016 Pathfinders, Nissan press releases touted its "fuel-efficient 260 horsepower 3.5L DOHC V6 engine mated to an advanced Xtronic [CVT] transmission with D-Step shift logic."[37]

68.    Nissan continues to promote Rogues and Pathfinders with what is merely a later iteration of the same defective CVT transmission. Nissan falsely claims that not only do CVTs offer "continuously smooth motion, providing seamless, stronger acceleration and increased fuel economy," but also that they are more durable, because "CVT vehicles ha[ve] fewer moving parts, which reduces friction and heat. This reduces wear and tear on your transmission, meaning it works harder, longer."[38]

---

[36] *See Nissan announces U.S. pricing for 2016 Rogue*, NISSAN (Oct. 26, 2015), https://usa.nissannews.com/en-US/releases/nissan-announces-u-s-pricing-for-2016-rogue (last visited Mar. 25, 2021) ("The engine is matched with an enhanced Xtronic transmission," and "[f]uel economy is 33 mpg highway"); *2016 Nissan Rogue Adds Forward Emergency Braking, NissanConnect Services and Siri Eyes Free to Long List of Available Features*, NISSAN, https://usa.nissannews.com/en-US/releases/release-cdfcc110c2a94ffd8e4b8dd14cf7b736-us-2016-nissan-rogue-press-kit# (last visited Mar. 25, 2021) ("Xtronic transmission is approximately 10 percent more efficient than the previous-generation design," noting that "[w]ith Active Engine Braking, the CVT helps slow the Rogue as the driver brakes, resulting in less brake effort by the driver").

[37] *Nissan announces 2016 Pathfinder U.S. Pricing*, NISSAN (Dec. 21, 2015), https://usa.nissannews.com/en-US/releases/release-44987c64cf5f49f9a4731db83af6acd1-nissan-announces-2016-pathfinder-u-s-pricing (last visited Mar. 25, 2021).

[38] *The Xtronic Continuously Variable Transmission*, NISSAN (Oct. 18, 2018), https://www.nissanusa.com/experience-nissan/news-and-events/xtronic-cvt-continuously-variable-transmission.html (last visited Mar. 25, 2021) (offering website visitors a chance to "build" their own Rogues and Pathfinders).

CLASS ACTION COMPLAINT - 31

**E.      Defendants regularly and continuously denied the existence of the defect.**

69.      Despite knowing that the CVTs in the Class Vehicles were defective, Defendants have continued to manufacture, market, and sell the vehicles in the United States.[39] Likewise, Defendants have continued to issue TSBs and piecemeal warranty extensions indicating their knowledge of the defect, but that never admit as much:

**Q4.**  Is there a quality issue with the CVT?

**A.**  Nissan is confident in the quality of our CVT technology and has developed this program to demonstrate this confidence and stand behind our products. The vast majority of CVT owners will not experience any issue with their transmission. But for the small percentage that may experience an issue this program will address concerns about the cost of repair.

\* \* \*

**Q10.**  What symptoms will I experience if my CVT has an issue?

**A.**  The vast majority of owners will not experience any issues. However, as with any part of the vehicle if you notice any changes in vehicle operation or performance you should bring your vehicle to an authorized Nissan dealer for inspection.

**F.      Defendants' warranties cover the defective CVT transmission.**

70.      Nissan issued express warranties that covered both Rogues and Pathfinders.[40]

71.      Under the terms of these warranties, which are identical in the parts pertinent to this case, Nissan offers five (5) years and/or 60,000 miles of powertrain coverage, under which Nissan agrees to cover "any repairs needed to correct defects in materials or workmanship,' including as to the transmissions.[41] This warranty covers the transmission "[c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all

---

[39] *See supra* sections IV.A-F.

[40] *See Nissan Vehicle Warranty*, NISSAN, https://www.nissanusa.com/owners/vehicle-resources/warranty-view-all.html (last visited Mar. 25, 2021).

[41] *See, e.g.*, Nissan, 2014 Warranty Information Booklet, at 5–6, https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/shared/2014/2014-nissan-warranty-booklet.pdf (last visited Mar. 25, 2021).

CLASS ACTION COMPLAINT - 32

internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."[42]

## V.    CLASS ACTION ALLEGATIONS

72.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), (b)(3) and (c)(4). As described below, this action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rules 23(a) and 23(b)(3). This action also satisfies the requirements of Rules 23(b)(2) and (c)(4).

73.    Pursuant to Fed. R. Civ. Proc. 23(a) and (b)(2), (b)(3) and/or (c)(4), Plaintiffs assert classes based on the applicable state law of the plaintiffs. The Class and Subclasses are defined as:

74.    **Nationwide Class:** All individuals in the United States who purchased or leased a 2014–16 Nissan Rogue or 2015-2016 Pathfinder equipped with a CVT[43].

75.    Colorado Subclass: All individuals in the state of Colorado who purchased or leased a 2014–16 Nissan Rogue or 2015–16 Pathfinder equipped with a CVT.

76.    Utah Subclass: All individuals in the state of Utah who purchased or leased a 2014–16 Nissan Rogue or 2015–16 Pathfinder equipped with a CVT.

77.    **Excluded from the Class and Subclasses are:** (1) Defendants, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an

---

[42] *Id.* at 6.

[43] Plaintiffs anticipate that as discovery progresses this class definition may evolve or expand to include additional model years and vehicles.

CLASS ACTION COMPLAINT - 33

appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Subclass definitions if discovery and further investigation reveal that the Class or any Subclass should be expanded or otherwise modified.

78.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Nissan's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

79.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class and Subclasses in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan, and equipped with the defective CVT. The representative Plaintiffs, like all Class Members, have been damaged by Nissan's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective CVT or its components. Furthermore, the factual bases of Nissan's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class as a whole.

80.     **Commonality:** There are numerous questions of law and fact common to Plaintiffs, the Class and Subclasses that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

> A.     Whether Class Vehicles contain defects relating to the CVT;
>
> B.     Whether the defects relating to the CVT constitute an unreasonable safety risk;

CLASS ACTION COMPLAINT - 34

C.     Whether the defective nature of the CVT constitutes a material fact;

D.     Whether Defendants have a duty to disclose the defective nature of the CVT to Plaintiffs and Class Members;

E.     Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

F.     Whether Defendants knew or reasonably should have known of the defects relating to the CVT before it sold and leased Class Vehicles to Plaintiffs and Class Members and, if so, how long Defendants have known of the defect;

G.     Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT;

H.     Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT;

I.     Whether Defendants breached the implied warranty of merchantability pursuant to the laws governing each of the Subclass jurisdictions; and

J.     Whether Defendants breached express warranties pursuant to the laws governing each of the Subclass jurisdictions.

81.     **Predominance and Superiority:** Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Nissan's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that

CLASS ACTION COMPLAINT - 35

only a few Class Members could afford to seek legal redress for Nissan's misconduct. Absent a class action, Class Members will continue to incur damages, and Nissan's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

82.     This action is also certifiable under the provisions of Fed. R. Civ. Proc. 23(b)(2) because Nissan has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

83.     In the alternative, the common issues regarding Nissan's liability and the existence of the CVT defect can be decided class-wide under Rule 23(c)(4).

84.     Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## VI.   EQUITABLE TOLLING

### A.   Discovery

85.     Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, Defendants' deception concerning the safety-related defect alleged herein.

86.     Defendants' concealment is ongoing and includes advertising the "virtually gearless Xtronic CVT transmission," which supposedly "maximizes efficiency and performance," and issuing piecemeal TSBs and warranty extensions.

CLASS ACTION COMPLAINT - 36

87.     Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the defective CVT alleged herein.

88.     Unless a Class Member experienced serious CVT defect symptoms—such as dangerous jerks, shudders, or failures—they would have no reason to discover the existence of a widespread defect or Defendants' efforts to conceal it.

89.     Plaintiffs and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about defect in the Class Vehicles until shortly before this action was filed.

90.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

**B.    Fraudulent Concealment**

91.     All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

92.     Defendants concealed the defective CVT and failed to disclose or remedy it for years, from as early as 2009 based on voluntary warranty extensions for related vehicles and transmissions, early NHTSA complaints, and relevant TSBs. This concealment, and the lack of any permanent repair, continues to the day of this filing.

**C.    Estoppel**

93.     Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles, including the vehicles' defective CVT and the safety-related issues it presents, and the inevitable repairs, costs, time, and monetary damage resulting therefrom. Defendants actively concealed the true character, quality, and nature of the Class Vehicles and did not disclose the CVT's defect.

CLASS ACTION COMPLAINT - 37

94. Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII. CAUSES OF ACTION

**A. Count 1 - Breach of Warranty Under Magnuson–Moss Warranty Act, 15 U.S.C. § 2303 et seq. – On Behalf of the Nationwide Class.**

95. Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

96. Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members.

97. The Class Vehicles are a "consumer product" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(1).

98. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(3).

99. Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

100. Nissan's express warranty is a "written warranty" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(6).

101. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

102. Under the warranties, Nissan expressly warranted that, for five (5) years and/or 60,000 miles, Nissan would warrant "any repairs needed to correct defects in materials or workmanship," including as to the transmission and its "[c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all

CLASS ACTION COMPLAINT - 38

internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."

103. On information and belief, Nissan breached the express warranty by:

A. Extending certain warranties for other vehicles with the same or similar CVT defects, thereby warranting to repair or replace any part defective in material or workmanship, including the CVT transmission, at no cost to the owner or lessee, but failing to do so for the Class Vehicles;

B. Selling and leasing Class Vehicles with CVTs that were defective in material and workmanship, requiring repair or replacement within the warranty period;

C. Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

D. Purporting to repair the Class Vehicles and/or performing inadequate, illusory repairs without permanently repairing the defect.

104. Furthermore, Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

105. Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose

CLASS ACTION COMPLAINT - 39

of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective.

106. Nissan's breach of express and implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

107. The amount in controversy of the individual claims of each Plaintiff and Class member meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

108. Nissan has been afforded a reasonable opportunity to cure its breach over the many years during which it attempted TSBs but could not permanently repair the defect, and when Plaintiffs or Class Members brought their vehicles in for diagnosis and repair of the transmissions. Additionally, Plaintiffs have notified Nissan by letter that Nissan has breached its warranties, that any attempt now to cure or repair the defects would be futile, and that Plaintiffs are bringing class claims.

109. As a direct and proximate cause of Nissan's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Nissan's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

110. As a result of Nissan's violations of the Magnuson–Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

**B.** **Count 2 - Breach of Express Warranty, Tenn. Code §§ 47-2-213 and 47-2A-210 -- On Behalf of the Nationwide Class.**

111. Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

112. Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members in the Nationwide Class.

113. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "seller" of motor vehicles under § 47-2-103(1)(d).

114. With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

115. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

116. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

117. Under the warranties, Nissan expressly warranted that, for five (5) years and/or 60,000 miles, Nissan would warrant "any repairs needed to correct defects in materials or workmanship," including as to the CVT transmission and its "[c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."

118. On information and belief, Nissan breached the express warranties by:

CLASS ACTION COMPLAINT - 41

A.    Extending certain warranties, thereby warranting to repair or replace any part defective in material or workmanship, including the CVT transmission, at no cost to the owner or lessee;

B.    Selling and leasing Class Vehicles with CVTs that were defective in material and workmanship, requiring repair or replacement within the warranty period;

C.    Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

D.    Purporting to repair the Class Vehicles and/or performing inadequate, illusory re-pairs.

119.    Nissan and/or its subsidiaries manufactured and/or installed the CVTs and the transmissions' component parts in the Class Vehicles, and the CVTs and their component parts are covered by the express warranties.

120.    The CVT defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Plaintiffs and Class Members.

121.    Plaintiffs relied on Nissan's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

122.    Under the express warranties, Nissan was obligated to correct the CVT's defect in the vehicles owned or leased by Plaintiffs and Class Members.

123.    Although Nissan was obligated to correct the CVT defect, none of the attempted fixes to the transmissions are adequate under the terms of the warranties, as they did not cure the defect.

CLASS ACTION COMPLAINT - 42

124.     Nissan breached the express warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranties, Nissan falsely informed Plaintiffs and Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the CVT transmission with equally defective components, without actually repairing the Class Vehicles.

125.     Nissan and its agent dealers have failed and refused to conform the CVT transmission to the express warranties. Nissan's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

126.     Moreover, Nissan's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitation to five (5) years and/or 60,000 miles is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

127.     The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and the Class Members, and Nissan knew or should have known that the Class Vehicles were defective at the time of sale.

128.     Plaintiffs and Class Members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

129.     Plaintiffs have notified Nissan of the breach and of Plaintiffs' intent to seek damages.

130.     That said, Plaintiffs and Class Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the CVT defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

131.     Because Nissan, through its conduct and exemplified by its own service bulletins, has covered repairs of the CVT defect if Nissan determines the repairs are appropriately covered under the warranties, Nissan cannot now deny that the warranties cover the CVT defect.

132.     Because Nissan has not been able to remedy the CVT defect, any limitation on remedies included in the warranties causes the warranties to fail their essential purposes, rendering these limitations null and void.

133.     As a direct and proximate cause of Nissan's breach, Plaintiffs and the Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiffs and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

134.     As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

**C.     Count 3 – Breach of the Implied Warranty of Merchantability, Tenn. Code §§ 47-2-314 and 47-2A-212 – On Behalf of the Nationwide Class.**

135.     Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

CLASS ACTION COMPLAINT - 44

136. Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members in the Nationwide Class.

137. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "seller" of motor vehicles under § 47-2-103(1)(d).

138. With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

139. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) AND 47-2A-103(1)(h).

140. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

141. Nissan sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.

142. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Nissan directly sold and marketed vehicles equipped with the CVTs to customers through authorized dealers, like those from whom Plaintiffs and Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Nissan knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiffs and the Class Members, with no modification to the defective CVT transmission.

143. Nissan provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

CLASS ACTION COMPLAINT - 45

144.     This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Nissan and its suppliers were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

145.     Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their CVTs and the existence of the defect at the time of sale or lease and thereafter. Nissan knew of this defect at the time these sale or lease transactions occurred.

146.     As a result of Nissan's breach of the applicable implied warranties, Plaintiffs and Class Members who purchased or leased the Class Vehicles suffered an ascertainable loss of money, property, and/or value. Additionally, as a result of the defective CVT, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

147.     Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Tenn. Code §§ 47-2- 314 and 47-2A-212.

148.     Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

CLASS ACTION COMPLAINT - 46

149.    Plaintiffs have notified Nissan of the breach and of Plaintiffs' intent to seek damages

150.    That said, Plaintiffs and the Class Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defective CVTs from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

151.    As a direct and proximate cause of Nissan's breach, Plaintiffs and the Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiffs and the Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

152.    As a direct and proximate result of Nissan's breach of the implied warranty of merchantability, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

**D.    Count 4 – Fraudulent Omission Under Tennessee Law – On Behalf of the Nationwide Class.**

153.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

154.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members in the Nationwide Class.

155.    Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use, and that the defect presented serious safety concerns.

CLASS ACTION COMPLAINT - 47

156.     Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

157.     Defendants had a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

       A.     Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

       B.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

       C.     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT defect prior to purchase or lease; and

       D.     Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

158.     The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them.

159.     Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

160.     Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on

CLASS ACTION COMPLAINT - 48

Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

161.    Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Plaintiffs and/or Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

162.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

**E.    Count 5 – Unjust Enrichment Under Tennessee Law – On Behalf of the Nationwide Class.**

163.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

164.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members in the Nationwide Class.

165.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the defective CVTs in Class Vehicles and Nissan's concealment of the defect, Defendants charged a higher price for their vehicles than the vehicles' true value and Defendants obtained monies which rightfully belong to Plaintiffs and other Class Members.

166.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class Members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits and, therefore, they should be disgorged.

CLASS ACTION COMPLAINT - 49

**F.   Count 6 – Colorado Breach of Express Warranty, Colo Rev. Stat. §§ 4-2-313 and 4-2.5-21 – On Behalf of the Colorado Subclass.**

167.   Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

168.   Plaintiff Balnicki brings this cause of action on behalf of himself and on behalf of all Class Members in the Colorado Subclass.

169.   Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

170.   With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

171.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

172.   Under the warranties, Nissan expressly warranted that, for five (5) years and/or 60,000 miles, Nissan would warrant "any repairs needed to correct defects in materials or workmanship," including as to the CVT and its "[c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."

173.   On information and belief, Nissan breached the express warranties by:

A.   Extending certain warranties, thereby warranting to repair or replace any part defective in material or workmanship, including the CVT, at no cost to the owner or lessee;

B.   Selling and leasing Class Vehicles with CVTs that were defective in material and workmanship, requiring repair or replacement within the warranty period;

CLASS ACTION COMPLAINT - 50

C. Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

D. Purporting to repair the Class Vehicles and/or performing inadequate, illusory repairs.

174. Nissan and/or its subsidiaries manufactured and/or installed the CVT and its component parts in the Class Vehicles, and the CVT and its component parts are covered by the express warranties.

175. The CVT defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Colorado Plaintiff and the Colorado Subclass Members.

176. Colorado Plaintiff and the Colorado Subclass Members relied on Nissan's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

177. Under the express warranties, Nissan was obligated to correct the CVT's defect in the vehicles owned or leased by Colorado Plaintiff and the Colorado Subclass Members.

178. Although Nissan was obligated to correct the CVT defect, none of the attempted fixes to the transmissions are adequate under the terms of the warranties, as they did not cure the defect.

179. Nissan breached the express warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranties, Nissan falsely informed Colorado Plaintiff and the Colorado Subclass Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective

CLASS ACTION COMPLAINT - 51

components in the CVT with equally defective components, without actually repairing the Class Vehicles.

180.    Nissan and its agent dealers have failed and refused to conform the CVT to the express warranties. Nissan's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

181.    Moreover, Nissan's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitation to five (5) years and/or 60,000 miles is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

182.    The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Colorado Plaintiff and the Colorado Subclass Members. Among other things, Colorado Plaintiff and the Colorado Subclass Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bar-gaining power existed between Nissan and Colorado Plaintiff and the Colorado Subclass Members, and Nissan knew or should have known that the Class Vehicles were defective at the time of sale.

183.    Colorado Plaintiff and the Colorado Subclass Members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

184.    Plaintiff has notified Nissan of the breach and of Plaintiff's intent to seek damages.

185.    That said, Colorado Plaintiff and the Colorado Subclass Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the CVT defect from the

CLASS ACTION COMPLAINT - 52

complaints and service requests it received from Colorado Plaintiff and the Colorado Subclass Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

186.    Because Nissan, through its conduct and exemplified by its own service bulletins, has covered repairs of the CVT defect if Nissan determines the repairs are appropriately covered un-der the warranties, Nissan cannot now deny that the warranties cover the CVT defect.

187.    Because Nissan has not been able to remedy the CVT defect, any limitation on remedies included in the warranties causes the warranties to fail their essential purposes, rendering these limitations null and void.

188.    As a direct and proximate cause of Nissan's breach, Colorado Plaintiff and the Colorado Subclass Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Colorado Plaintiff and the Colorado Subclass Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

189.    As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

190.    Colorado Subclass.

**G.    Count 7 – Colorado Breach of Implied Warranty of Merchantability, Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-21 – On Behalf of the Colorado Subclass.**

191.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

192.    Plaintiff Balnicki brings this cause of action on behalf of himself and on behalf of all Class Members in the Colorado Subclass.

CLASS ACTION COMPLAINT - 53

193. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

194. With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

195. The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

196. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212.

197. Nissan sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.

198. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Nissan directly sold and marketed vehicles equipped with the CVT to customers through authorized dealers, like those from whom Colorado Plaintiff and the Colorado Subclass Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Nissan knew that the Class Vehicles would and did pass un-changed from the authorized dealers from whom Colorado Plaintiff and the Colorado Subclass Members, with no modification to the defective CVT.

199. Nissan provided Colorado Plaintiff and the Colorado Subclass Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

CLASS ACTION COMPLAINT - 54

200.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Nissan and its suppliers were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

201.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Colorado Plaintiff and the Colorado Subclass Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their CVT and the existence of the defect at the time of sale or lease and thereafter. Nissan knew of this defect at the time these sale or lease transactions occurred.

202.    As a result of Nissan's breach of the applicable implied warranties, Colorado Plaintiff and the Colorado Subclass Members suffered an ascertainable loss of money, property, and/or value. Additionally, as a result of the defective CVT, Colorado Plaintiff and the Colorado Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

203.    Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

204.    Colorado Plaintiff and the Colorado Subclass Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

205.    Colorado Plaintiff has notified Nissan of the breach and of Plaintiff's intent to seek damages.

CLASS ACTION COMPLAINT - 55

206.    Colorado Plaintiff and the Colorado Subclass Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defective CVTs from the complaints and service requests it received from Colorado Plaintiff and the Colorado Subclass Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

207.    As a direct and proximate cause of Nissan's breach, Colorado Plaintiff and the Colorado Subclass Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Colorado Plaintiff and the Colorado Subclass Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

208.    As a direct and proximate result of Nissan's breach of the implied warranty of merchantability, Colorado Plaintiff and the Colorado Subclass Members have been damaged in an amount to be proven at trial.

**H.    Count 8 – Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. – On Behalf of the Colorado Subclass.**

209.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

210.    Plaintiff Balnicki brings this cause of action on behalf of himself and on behalf of all Class Members in the Colorado Subclass.

211.    Nissan is a "person" within the meaning of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-102.

212.    The CCPA prohibits a person from engaging in a "deceptive trade practice," including "knowingly mak[ing] a false representation as to the characteristics, ingredients, uses,

CLASS ACTION COMPLAINT - 56

benefits, alterations, or quantities of goods […];" "represent[ing] that goods, good, services, or property are of a particular standard, quality, or grade, […] if he knows or should know that they are of another;" and "advertis[ing] goods, services, or property with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(e), (g), and (i).

213.    Nissan participated in deceptive trade practices that violated the CCPA as described be-low and alleged throughout the Complaint. By failing to disclose the defective CVT, by concealing the defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Nissan knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Nissan systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the defective CVT in the course of its business.

214.    Nissan also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

215.    Nissan's unfair and deceptive acts or practices occurred repeatedly in Nissan's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

216.    Nissan knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

217.    Nissan knew or should have known that its conduct violated the CCPA.

CLASS ACTION COMPLAINT - 57

218.     Colorado Plaintiff and the Colorado Subclass Members reasonably relied on Nissan's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

219.     Had Colorado Plaintiff and the Colorado Subclass Members known that the Class Vehicles would exhibit the defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Nissan's misconduct.

220.     Colorado Plaintiff and the Colorado Subclass Members suffered injury in fact to a legally protected interest. As a result of Nissan's conduct, Colorado Plaintiff and the Colorado Subclass Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

221.     As a result of Nissan's conduct, Colorado Plaintiff and the Colorado Subclass Members were harmed and suffered actual damages as a result of Nissan's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

222.     As a direct and proximate result of Nissan's unfair or deceptive acts or practices, Colorado Plaintiff and the Colorado Subclass Members suffered and will continue to suffer injury in fact and/or actual damages.

223.     Colorado Plaintiff and the Colorado Subclass Members seek injunctive relief under the CCPA, including an order requiring that Defendants perform a competent recall and repair all Class Vehicles at no expense to Colorado Plaintiff and members of the Colorado Subclass.

**I.    Count 9 – Utah Breach of Express Warranty of Merchantability, Utah Code Ann. § 70A-2-313 – On Behalf of the Utah Subclass.**

224.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

225.    Plaintiff Eliason brings this cause of action on behalf of herself and on behalf of all Class Members in the Utah Subclass.

226.    Nissan is and was at all relevant times "merchants" with respect to motor vehicles under Utah Code Ann. § 70A-2-104(1) and "sellers" of motor vehicles under Utah Code Ann. § 70A-2-313.

227.    The Affected Vehicles are and were at all relevant times "goods" within the meaning of Utah Code Ann. §§ 70A-2-105(1) and 70A-2-313.

228.    Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

229.    Under the warranties, Nissan expressly warranted that, for five (5) years and/or 60,000 miles, Nissan would warrant "any repairs needed to correct defects in materials or workmanship," including as to the CVT and its "[c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing, A/T cooler, and electronic transmission controls."

230.    On information and belief, Nissan breached the express warranties by:

A.    Extending certain warranties, thereby warranting to repair or replace any part defective in material or workmanship, including the CVT, at no cost to the owner or lessee;

B.    Selling and leasing Class Vehicles with CVTs that were defective in material and workmanship, requiring repair or replacement within the warranty period;

CLASS ACTION COMPLAINT - 59

C.     Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

D.     Purporting to repair the Class Vehicles and/or performing inadequate, illusory re-pairs.

231.    Nissan and/or its subsidiaries manufactured and/or installed the CVTs and the transmissions' component parts in the Class Vehicles, and the CVT and its component parts are covered by the express warranties.

232.    The CVT defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Utah Plaintiff and the Utah Subclass Members.

233.    Utah Plaintiff and the Utah Subclass Members relied on Nissan's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

234.    Under the express warranties, Nissan was obligated to correct the CVT's defect in the vehicles owned or leased by Utah Plaintiff and the Utah Subclass Members.

235.    Although Nissan was obligated to correct the CVT defect, none of the attempted fixes to the transmissions are adequate under the terms of the warranties, as they did not cure the defect.

236.    Nissan breached the express warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranties, Nissan falsely informed Utah Plaintiff and the Utah Subclass Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the CVT with equally defective components, without actually repairing the Class Vehicles.

CLASS ACTION COMPLAINT - 60

237. Nissan and its agent dealers have failed and refused to conform the CVT to the express warranties. Nissan's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

238. Moreover, Nissan's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitation to five (5) years and/or 60,000 miles is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

239. The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Utah Plaintiff and the Utah Subclass Members. Among other things, Utah Plaintiff and the Utah Subclass Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and Utah Plaintiff and the Utah Subclass Members, and Nissan knew or should have known that the Class Vehicles were defective at the time of sale.

240. Utah Plaintiff and the Utah Subclass Members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

241. Utah Plaintiff has notified Nissan of the breach and of Plaintiff's intent to seek damages.

242. That said, Utah Plaintiff and the Utah Subclass Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the CVT defect from the complaints and service requests it received from Utah Plaintiff and the Utah Subclass Members,

CLASS ACTION COMPLAINT - 61

from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

243.     Because Nissan, through its conduct and exemplified by its own service bulletins, has covered repairs of the CVT defect if Nissan determines the repairs are appropriately covered under the warranties, Nissan cannot now deny that the warranties cover the CVT defect.

244.     Because Nissan has not been able to remedy the CVT defect, any limitation on remedies included in the warranties causes the warranties to fail their essential purposes, rendering these limitations null and void.

245.     As a direct and proximate cause of Nissan's breach, Utah Plaintiff and the Utah Subclass Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Utah Plaintiff and the Utah Subclass Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

246.     As a direct and proximate result of Nissan's breach of express warranties, Utah Plaintiff and the Utah Subclass Members have been damaged in an amount to be determined at trial.

**J.     Count 10 – Utah Breach of Implied Warranty of Merchantability, Utah Code Ann. § 70A-2-314 – On Behalf of the Utah Subclass.**

247.     Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

248.     Plaintiff Eliason brings this cause of action on behalf of herself and on behalf of all Class Members in the Utah Subclass.

249.     Nissan was at all times a merchant with respect to motor vehicles within the meaning of the Utah Code Ann. § 70A-2-314.

CLASS ACTION COMPLAINT - 62

250.   Under Utah Code Ann. § 70A-2-314, a warranty was implied that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was when Utah Plaintiff and the Utah Subclass Members purchased or leased their Class Vehicles.

251.   Nissan sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.

252.   Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Nissan directly sold and marketed vehicles equipped with the CVTs to customers through authorized dealers, like those from whom Utah Plaintiff and the Utah Subclass Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Nissan knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Utah Plaintiff and the Utah Subclass Members, with no modification to the defective CVT.

253.   Nissan provided Utah Plaintiff and the Utah Subclass Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

254.   This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Nissan and its suppliers were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

255.   Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose

of providing Utah Plaintiff and the Utah Subclass Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their CVTs and the existence of the defect at the time of sale or lease and thereafter. Nissan knew of this defect at the time these sale or lease transactions occurred.

256.    As a result of Nissan's breach of the applicable implied warranties, Utah Plaintiff and the Utah Subclass Members who purchased or leased the Class Vehicles suffered an ascertainable loss of money, property, and/or value. Additionally, as a result of the defective CVT, Utah Plaintiff and the Utah Subclass Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

257.    Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Ohio Rev. Code Ann. §§ 1302.27 and 1310.19.

258.    Utah Plaintiff and the Utah Subclass Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

259.    Utah Plaintiff has notified Nissan of the breach and of Plaintiff's intent to seek damages.

260.    Utah Plaintiff and the Utah Subclass Members were not required to notify Nissan of the breach because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defective CVTs from the complaints and service requests it received from Utah Plaintiff and the Utah Subclass Members,

CLASS ACTION COMPLAINT - 64

from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

261.    As a direct and proximate cause of Nissan's breach, Utah Plaintiff and the Utah Subclass Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Utah Plaintiff and the Utah Subclass Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

262.    As a direct and proximate result of Nissan's breach of the implied warranty of merchantability, Utah Plaintiff and the Utah Subclass Members have been damaged in an amount to be proven at trial.

**K.    Count 11 – Violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 et seq. – On Behalf of the Utah Subclass.**

263.    Plaintiffs incorporate by reference and re-allege the allegations above as if fully set forth here.

264.    Plaintiff Eliason brings this cause of action on behalf of herself and on behalf of all Class Members in the Utah Subclass.

265.    Nissan qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

266.    Utah Plaintiff and the Utah Subclass Members are "persons" under Utah Code Ann. § 13-11-3. Sales of the Class Vehicles to Utah Plaintiff and the Utah Subclass Members were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

267.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates

CLASS ACTION COMPLAINT - 65

that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

268.    In the course of Nissan's business, it willingly failed to disclose and actively concealed that the CVT in the Class Vehicles is defective. Nissan engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts r practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner.

269.    Nissan's acts had the capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, or knowing concealment, suppression, or omission of any material fact with intent that Utah Plaintiff and the Utah Subclass Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Nissan engaged in unfair and deceptive business practices in violation of the Utah CSPA.

CLASS ACTION COMPLAINT - 66

270.    In purchasing or leasing the Class Vehicles, Utah Plaintiff and the Utah Subclass Members were deceived by Nissan's failure to disclose that the Class Vehicles' CVT is defective.

271.    Utah Plaintiff and the Utah Subclass Members reasonably relied upon Nissan's omissions. They had no way of knowing that Nissan's representations and omissions were false and gravely misleading.

272.    Nissan's actions as set forth above occurred in the conduct of trade or commerce.

273.    The facts concealed and omitted by Nissan were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Utah Plaintiff and the Utah Subclass members known of the Transmission Defect at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

274.    Nissan's unfair or deceptive acts or practices, fraud, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

275.    Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Utah Plaintiff and the Utah Subclass Members.

276.    Nissan knew or should have known that its conduct violated the Utah CSPA.

277.    Nissan owed Utah Plaintiff and the Utah Subclass Members a duty to disclose the truth about the defective CVT, and:

        A.    Possessed exclusive and/or superior knowledge of the design of the Class Vehicles and the defective CVT in its vehicles, as alleged generally above;

        B.    Intentionally concealed the foregoing from Utah Plaintiff and the Utah Subclass Members; and/or

CLASS ACTION COMPLAINT - 67

C. Made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding material facts from Utah Plaintiff and the Utah Subclass Members that contradicted these representations.

278. Due to Nissan's specific and superior knowledge that the CVT in the Class Vehicles is defective and will prematurely fail, and the reliance of Utah Plaintiff and the Utah Subclass Members on these material omissions, Nissan had a duty to disclose that the Class Vehicles suffered from the transmission defect.

279. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Utah Plaintiff and the Utah Subclass Members.

280. Nissan's conduct proximately caused injuries to Utah Plaintiff and the Utah Subclass Members.

281. Utah Plaintiff the Utah Subclass Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Nissan's conduct because they overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective transmission. These injuries are the direct and natural consequence of Nissan's misrepresentations and omissions.

282. Nissan's violations present a continuing risk to Utah Plaintiff and the Utah Subclass members and the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

283. Pursuant to Utah Code Ann. § 13-11-4, Utah Plaintiff and the Utah Subclass members seek monetary relief against measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Utah Plaintiff and the Utah Subclass Members, reasonable attorneys' fees, and any other just and proper relief

CLASS ACTION COMPLAINT - 68

available under the Utah CSPA. Utah Plaintiff and the Utah Subclass Members also seek a declaratory judgment that Nissan is responsible for its violation of the Utah CSPA, an order enjoining Nissan from any further deceptive acts related to the defective CVT, and any other ancillary relief, including an appropriate fix for the defective CVT and/or the extension of relevant warranties.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiffs on behalf of themselves, and all others similarly situated, requests the Court to enter judgment against Nissan Defendants, as follows:

A. An order certifying the proposed Class and Subclasses pursuant to Federal Rule of Civil Procedure 23, designating Plaintiffs as named representatives of the Class and their representative Subclasses, and designating the undersigned as Class Counsel for the Class and Subclasses;

B. A declaration that Defendants are financially responsible for notifying all members of the Classes about the defective nature of the CVT transmission, any repair or replacement available to remedy the defect and/or the need for periodic maintenance;

C. A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

D. An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to remove and replace Plaintiffs and Class Members' transmissions with a suitable alternative product; enjoining Defendants from selling the Class Vehicles with the misleading information and defective transmissions; compelling Defendants to provide members of the Classes with a replacement transmission that does not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a

CLASS ACTION COMPLAINT - 69

manner deemed to be appropriate by the Court, to cover the injury alleged at no cost to members of the Classes and to notify all members of the Classes that such warranty has been reformed;

E.      An order requiring that Defendants perform a competent recall, and repair all Class Vehicles at no expense to Plaintiffs and members of the Classes;

F.      A declaration requiring Defendants to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

G.      A declaration that Defendant is required to engage in corrective advertising, including providing information regarding the timeline for repair or replacement of the defective transmissions in all Class Vehicles;

H.      An award to Plaintiffs and members of the Classes for actual, compensatory, exemplary, and statutory damages, including interest, including damages for economic loss including loss of the benefit of the bargain, overpayment damages, diminished value and out-of-pocket losses, in an amount to be proven at trial;

I.      Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged, including any applicable statutory and civil penalties;

J.      A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and members of the Classes;

K.      An award of attorneys' fees and costs, as allowed by law;

L.      An award of pre-judgment and post-judgment interest on any amounts awarded, as provided by law;

CLASS ACTION COMPLAINT - 70

M.     Leave to amend the Complaint to conform to the evidence produced in discovery; and

N.     Granting such other and further relief as the Court deems just and proper.

## IX.   DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(c), Plaintiffs demand a trial by jury of any and all issues in this action so triable.


DATED this 26th day of March, 2021.

By *s/J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR #23045)
Benjamin A. Gastel (BPR #28699)
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Ste 200
Nashville, TN 37203
Phone: 615-254-8801
Fax: 615-255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

Gretchen Freeman Cappio*
Lynn Lincoln Sarko*
Ryan McDevitt*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com
lsarko@kellerrohrback.com
rmcdevitt@kellerrohrback.com

*Attorneys for Plaintiffs*
**Pro Hac Vice* forthcoming